PEARSON, J.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| CHERYL M. HEIDE, | ) | |
| | ) | CASE NO. 4:20CV160 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | JUDGE BENITA Y. PEARSON |
| | ) | |
| ETHICON, INC., *et al.*, | ) | |
| | ) | **MEMORANDUM OF OPINION AND** |
| Defendants. | ) | **ORDER** [Resolving ECF No. 21] |
| | ) | |

Pending is Defendants Ethicon, Inc.'s and Johnson & Johnson's[1] motion for partial

summary judgment. ECF No. 21. Plaintiff Cheryl M. Heide has submitted a brief in opposition.

ECF No. 23. For the reasons explained below, Defendants' motion is granted in part and denied

in part.

## I. Introduction

### A. Procedural History

This matter is one of several multidistrict litigation ("MDL") cases alleging various

product liability claims against Defendants pertaining to pelvic mesh products used to treat

women around the country. *See Lancaster v. Ethicon, Inc.*, No. 1:19-CV-1377 (LEK/ML), 2020

WL 819291, at *1 (N.D.N.Y Feb. 19, 2020); *Kohn v. Ethicon, Inc.*, No. 19-40004, 2020 WL

733126, at *2 (E.D. Pa. Feb. 13, 2020). The Judicial Panel on Multidistrict Litigation ("MDL

---

[1] Defendant Ethicon, LLC was voluntarily dismissed with prejudice by joint
stipulation under Fed. R. Civ. P. 41(a)(1)(A)(ii) after the pending partial summary
judgment motion was filed. ECF No. 25.

Panel") consolidated the cases for pre-trial matters before Judge Joseph Goodwin in the Southern District of West Virginia. *See* ECF No. 2.

After Judge Goodwin managed pre-trial matters, including discovery, the above-captioned matter was transferred to the Court. *See* ECF No. 30 (transferring cases filed in the MDL litigation to the appropriate jurisdiction). Judge Goodwin indicated that extensive discovery has been conducted and urged the transferee courts to "set these cases for trial without reopening discovery." *Id.* at PageID #: 586. Judge Goodwin noted that "[f]urther discovery [would] only result in unjust delay." *Id.*

### B. Plaintiff's Claims

Plaintiff filed a Short Form Complaint against Defendants regarding an implanted sling developed by Defendants and implanted in Plaintiff by her treating physician for treatment of her stress urinary incontinence ("SUI"). ECF No. 1. The Short Form Complaint was filed as part of the First Amended Master Long Form Complaint and Jury Demand ("Master Complaint"), raising eighteen separate claims against Defendants. ECF No. 31-1. Of the eighteen claims, Plaintiff raised all except for Count XVI (loss of consortium). ECF No. 1 at PageID #: 4-5.

Before the matter was transferred, Defendants filed the pending motion for partial summary judgment. ECF No. 21. Plaintiff filed an opposition. ECF No. 23. Defendants did not reply and the time to do so has passed. The motion is ripe for the Court's consideration.

## II. Standard of Review

Summary judgment is appropriately granted when the pleadings, the discovery and disclosure materials on file, and any affidavits show "that there is no genuine dispute as to any

material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Johnson v. Karnes*, 398 F.3d 868, 873 (6th Cir. 2005). The moving party is not required to file affidavits or other similar materials negating a claim on which its opponent bears the burden of proof, so long as the movant relies upon the absence of the essential element in the pleadings, depositions, answers to interrogatories, and admissions on file. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party must "show that the non-moving party has failed to establish an essential element of his case upon which he would bear the ultimate burden of proof at trial." *Guarino v. Brookfield Twp. Trustees.*, 980 F.2d 399, 403 (6th Cir. 1992).

Once the movant makes a properly supported motion, the burden shifts to the non-moving party to demonstrate the existence of a genuine dispute. An opposing party may not simply rely on its pleadings; rather, it must "produce evidence that results in a conflict of material fact to be resolved by a jury." *Cox v. Ky. Dep't of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995). To defeat the motion, the non-moving party must "show that there is doubt as to the material facts and that the record, taken as a whole, does not lead to a judgment for the movant." *Guarino*, 980 F.2d at 403. In reviewing a motion for summary judgment, the Court views the evidence in the light most favorable to the non-moving party when deciding whether a genuine issue of material fact exists. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970).

"The mere existence of some factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment . . . ." *Scott v. Harris*, 550 U.S. 372, 380 (2007) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986)). The fact

under dispute must be "material," and the dispute itself must be "genuine."  A fact is "material" only if its resolution will affect the outcome of the lawsuit.  *Scott*, 550 U.S. at 380.  In determining whether a factual issue is "genuine," the Court assesses whether the evidence is such that a reasonable jury could find that the non-moving party is entitled to a verdict.  *Id.* ("[Summary judgment] will not lie . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.").

### III. Discussion

Defendants seek partial summary judgment[2] on several of Plaintiff's claims.  First, Defendants insist the following claims are abrogated by the Ohio Product Liability Act ("OPLA"): Counts 1 (negligence), VI (common law fraud), VII (fraudulent concealment), VIII (constructive fraud), IX (negligent misrepresentation), X (negligent infliction of emotional distress), XI (breach of express warranty), XII (breach of implied warranty), XIII (violation of consumer protection laws), XIV (gross negligence), and XV (unjust enrichment).  Second, Defendants aver that Count II (strict liability-manufacturing defect) fails because Plaintiff has no evidence that the product obviated from on objective standard.  Third, Defendants claim that Count III (strict liability-failure to warn) fails as a matter of law because Plaintiff cannot establish causation.  Finally, Defendants argue that Count IV (strict liability - defective product) is not a cause of action under Ohio law, and even if such a claim exists, it falls under the OPLA.

---

[2] Defendants do not seek summary judgment on Counts V (strict liability-design defect), XVII (punitive damages), and XVIII (discovery rule and tolling).

Plaintiff does not oppose summary judgment for the following counts: Counts I (negligence); II (strict liability-manufacturing defect)[3], IX (negligent misrepresentation), X (negligent infliction of emotional distress), XI (breach of express warranty), XII (breach of implied warranty), XIV (gross negligence), and XV (unjust enrichment). ECF No. 23 at PageID #: 394. Accordingly, the Court grants summary judgment to Defendants on these claims.

**A. Whether Claims Are Abrogated by OPLA**

Next, the Court determines whether Counts VI (common law fraud), VII (fraudulent concealment), VIII (constructive fraud), and XIII (violation of consumer protection laws) are abrogated by the OPLA.

"The OPLA abrogates common law product liability causes of action." *Meta v. Target Corp.,* 74 F. Supp. 3d 858, 861 (N.D. Ohio 2015) (Nugent, J.). Claims abrogated by the OPLA include allegations concerning the "'design, formulation, production, construction, creation, assembly, rebuilding, testing, or marketing'" of a product, as well as '[a]ny warning or instruction, or lack of warning or instruction, associated with that product.'" *Miles v. Raymond Corp.,* 612 F. Supp. 2d 913, 919 (N.D. Ohio 2009) (Lioi, J.) (citing Ohio Rev. Code § 2307.71(A)(13)(a) & (b)).

---

[3] Although Plaintiff does not oppose summary judgment on this count, she indicates that she intends to still use "evidence that Ethicon's manufacturing process and the raw materials used in the manufacture of the Prolene (PROLENE) product resulted in defects in the products in a manner which supports Plaintiff's negligence, failure to warn, and punitive damages claims." ECF No. 23 at PageID #: 393.

### 1. Count VI - Common Law Fraud

Claims of fraud that are grounded in the duty to not deceive, rather than the duty to warn, are not preempted by the OPLA. *See In re Darvocet, Darvon, & Propoxyphene Prod. Liab. Litig.*, 756 F.3d 917, 950 (6th Cir. 2014) (citing the *Hogue* court and noting it "observed that . . . active fraud claims can exist outside of the [OPLA] . . . .") (citations omitted); *but see Krumpelbeck v. Breg, Inc.*, 491 F. App'x 713, 722 (6th Cir. 2012) (finding that a claim of fraud based on a material misrepresentation was abrogated by the OPLA).[4]  According to the Master Complaint, Plaintiff's claim of common law fraud is based on an allegation that "Defendants falsely and fraudulently represented . . . that the Pelvic Mesh Products had been tested and were found to be safe and effective." ECF No. 31-1 at ¶ 120.  Plaintiff alleges this claim was knowingly false. *Id.* at ¶ 121-22.  Against this backdrop, "[Plaintiff's] claim for fraud is not abrogated by the OPLA because it alleges violation of Defendants' general duty not to deceive consumers and physicians." *Hutchens*, 2016 WL 5661582, at *12.  Because "[t]hese allegations

---

[4]  *See also Hutchens v. Abbott Labs., Inc.*, No. 1:14CV176, 2016 WL 5661582, at *12 (N.D. Ohio Sept. 30, 2016) (Boyko, J.) ("While any negligent misrepresentation is barred by the OPLA, fraud is not.") (citation omitted); *Meta*, 74 F. Supp. 3d at 865 ("Claims of active misrepresentation (as opposed to failure to warn) . . . are not abrogated by the OPLA.") (citation omitted); *Hogue v. Pfizer,* 893 F. Supp. 2d 914, 918  (S.D. Ohio Sept. 5, 2013) ("Specifically, the OPLA does not abrogate fraud claims which are based on a general duty not to actively deceive; however, the OPLA does abrogate fraud claims arising from a duty to warn.") (citations omitted); *Boroff v. Alza Corp.*, 685 F. Supp. 2d 704, 711 (N.D. Ohio 2010) (Katz, J.); *Stratford v. SmithKline Beecham Corp.*, No. 2:07  CV  639, 2008 WL 2491965, at * 8 (S.D. Ohio June 17, 2008); and  *Hollar v. Philip Morris, Inc.*, 43 F. Supp. 2d 794, 808 (N.D. Ohio 1998) (Nugent, J.) ("Plaintiff's common law fraud claim is based primarily on Defendants' breach of their alleged duty not to deceive and is not limited to a product liability claim.") (citations omitted).

of active misrepresentation go beyond a product liability claim," summary judgment is denied regarding Count VI (common law fraud). *Meta*, 74 F. Supp. 3d at 865.

### 2. Counts VII and VIII - Fraudulent Concealment and Constructive Fraud

The basis of Plaintiff's fraudulent concealment claim is that "Defendants fraudulently concealed and/or failed to disclose to or warn" about the products. ECF No. 31-1 at ¶ 151. The Master Complaint contends that "Defendants were under a duty to disclose and warn of the defective nature" of the pelvic mesh product. *Id.* at ¶ 152. Therefore, Plaintiff's claim of fraudulent concealment is abrogated by the OPLA. *See Johnson v. Eli Lilly and Co.*, No. 1:14cv453, 2015 WL 1120009, at *2 (S.D. Ohio Mar. 12, 2005) ("These allegations show that Plaintiff's fraud claim is based on a theory of omission and concealment . . . . Therefore, the Court finds that Plaintiff's claim of fraudulent misrepresentation . . . falls within the scope of the OPLA and is dismissed."); *Hogue,* 893 F. Supp. 2d at 918 (finding that the fraud claim was abrogated because "[t]he substance of Ms. Hogue's fraud claim is unmistakably failure to warn."). Accordingly, summary judgment is granted on Count VII (fraudulent concealment).

Plaintiff's constructive fraud claim similarly stems from the allegation that "Defendants continue to suppress, conceal, omit, and/or misrepresent information to Plaintiffs, the medical community, and/or the FDA, concerning the severity of risks and dangers inherent in the intended use of the Defendants' Pelvic Mesh Products, as compared to other products and forms of treatment." ECF No. 31-1 at ¶ 159. Plaintiff avers that "Defendants have concealed and suppressed material information." *Id.* at ¶ 161. This claim is rooted in the failure to warn, which

falls under the umbrella of product liability claims abrogated by the OPLA. Accordingly, summary judgment is granted on Count VIII (constructive fraud).

### 3. Count XIII - Violation of Consumer Protection Laws

Plaintiff alleges that Defendants engaged in unfair or deceptive acts or practices. *Id.* at ¶ 201. Although not explicitly stated, Plaintiff's consumer protection laws claim invoke the Ohio Consumer Sales Practice Act ("OCSPA"). *See* Ohio Rev. Code § 1345.02. OCSPA claims are also subject to the OPLA.[5] Moreover, other than vaguely claiming separate economic losses, *see* ECF No. 31-1 at ¶ 215, Plaintiff has not sufficiently explained what those economic losses might be. *See Utz v. Howmedica Osteonics, Corp.*, No. 1:06 CV 1963, 2008 WL 11378848, at *4-5 (N.D. Ohio Sept. 19, 2008) (Oliver, J.) (finding that medical expenses and the defective product itself were not separate economic losses). Notably, Plaintiff does not meaningfully oppose summary judgment on this claim. *See* ECF No. 23 at PageID #: 394 (referring to its argument regarding failure to warn to support its opposition to summary judgment on this claim). Summary judgment is granted to Defendants regarding Count XII (consumer protection laws).

---

[5] *See S.S. v. Leatt Corp.*, No. 1:12 CV 483, 2013 WL 3777098, at *2 (N.D. Ohio Jul 17, 2013) (Gaughan, J.) (granting summary judgment on the OCSPA claim); *Harris v. Eli Lilly & Co.*, No. 4:12CV2481, 2012 WL 6732725, at *5 (N.D. Ohio Dec. 28, 2012) (Adams, J.) (finding that a claim brought under consumer protection statutes was abrogated by the OPLA); *Mitchell v. Proctor & Gamble*, No. 2:09 CV 426, 2010 WL 728222, at *4 (S.D. Ohio Mar. 1, 2010) ("Further, the OPLA has also been held to preempt claims under the OCSPA, where the OCSPA claims are primarily rooted in product liability claims."); *Bouchard v. American Home Prods. Corp.*, No. 3:98 CV 7541, 2002 WL 32597992, at *11 (N.D. Ohio May, 2002) (Katz, J.); *Schnell v. American Home Prods. Corp.*, No. 3:00 CV 7228, 2000 WL 35777837, at *2 (N.D. Ohio July 11, 2000) (Katz, J.).

In sum, the Court finds that the following claims are abrogated by the OPLA: Counts VII (fraudulent concealment), VIII (constructive fraud), and XIII (consumer protection laws). Count VI (common law fraud) is not subject to the OPLA and summary judgment is denied regarding this claim.

### B. Causation - Count III (Strict Liability-Failure to Warn)

Defendants claim that they are entitled to summary judgment on the failure to warn claim because Plaintiff has failed to establish causation. A failure to warn claim is comprised of three elements: "(1) a duty to warn against reasonably foreseeable risk; (2) breach of this duty; and (3) an injury that is proximately caused by the breach." *Graham v. American Cyanamid Co.*, 350 F.3d 496, 516 (6th Cir. 2003). Proximate causation analysis concerns two separate issues: "(1) whether lack of adequate warnings contributed to the plaintiffs' [use] of the [product], and (2) whether [use] of the [product] constitutes a proximate cause of the plaintiff's injury." *Sheffer v. Novartis Pharmaceuticals Corp.*, No. 3:12 cv 238, 2013 WL 5276558, at *11 (S.D. Ohio Sept. 18, 2013) (citing *Seley v. G.D. Searle & Co.*, 423 N.E.2d 831, 838 (Ohio 1981)).

In order to prove causation, Plaintiff must show that her implanting physician was aware of the alleged inadequate warning made by Defendants. *See Cutter v. Ethicon, Inc.*, No. 5:19-443-DCR, 2020 WL 109809, at *8 (E.D. Ky. Jan. 9, 2020) ("Dr. Guiler testified that he did not consult these materials to obtain information about the risks of implanting the Prolift device in Jenesta and, in fact, has never relied on them for such information."). Plaintiff must also show that her physician would have acted differently had he been given an adequate warning. *See*

*Contreras v. Bos. Sci. Corp.*, No. 2:12-cv-03745, 2016 WL 1436682, at *4 (S.D.W. Va. Apr. 11, 2016) ("Here, the plaintiffs have not provided any citations to the record showing that Dr. Baker, the implanting physician, would have taken a different course of action even if she had been given an adequate warning."); *Fulgenzi v. PLIVA*, 140 F. Supp. 3d 637, 648 (N.D. Ohio 2015) (Lioi, J.) ("The undisputed facts in the record establish that plaintiff's physicians did not ever read, let alone rely on, PLIVA's inadequate 2004 warning."); *Higgins v. Ethicon, Inc*., No. 2:12-cv-01365, 2017 WL 2813144, at *3 (S.D.W.Va. Mar. 30, 2017) (granting summary judgment on a Texas law failure to warn claim because "[t]he plaintiffs have failed to present any testimonial or other evidence that Dr. Anhalt would not have used or prescribed the TVT-S to treat Ms. Higgins had he received a different warning.").

Defendants maintain that Plaintiff has failed to demonstrate a genuine dispute of material fact regarding causation because the implanting physician[6] was not deposed and has not submitted any testimony.  ECF No. 22 at PageID #: 383.  After reviewing the record, the Court finds that Plaintiff has not provided sufficient evidence of causation at summary judgment. Plaintiff has produced an expert report from Dr. Robert Wayment who claimed that the mesh productive is defective in several different respects.  ECF No. 23-2 at PageID #: 402.  Although this evidence arguably demonstrates the pelvic mesh product may have had risks, Plaintiff has

---

[6] Although Plaintiff refers to the implanting physician as Dr. Prakash Maniam in her brief and the Short Form Complaint, her fact sheet, the deposition, and the expert report discuss a separate physician named Dr. Nehemia Hampel. *See* ECF No. 23 at PageID #: 390; ECF No. 23-3 at PageID #: 406; ECF No. 23-2 at PageID #: 401; ECF No. 21-1 at PageID #: 376; ECF No. 1 at PageID #: 4.

failed to provide any evidence suggesting her physician was aware of the risks associated with the product. The only potential risk Plaintiff has demonstrated that the implanting physician was aware of was the pain she would experience after the surgery. *See* ECF No. 23-3 at PageID #: 405. Additionally, despite suggesting that the implanting physician was not aware of the product's defects, *see id.*, Plaintiff has not presented evidence suggesting that he would have acted differently if he had been aware of the potential risks or had been given an adequate warning.

Furthermore, Plaintiff's contention that the physician "can certainly testify in court as to what he knew at the time of the implant procedure, and what decisions he would have altered having additional information" do not save her claim. ECF No. 23 at PageID #: 390. Plaintiff must provide sufficient evidence of an essential element of her failure to warn claim at summary judgment and she has failed to do so.[7] *See Fulgenzi*, 140 F. Supp. 3d at 648 ("Of course, at the summary judgment stage, a plaintiff must do more than merely offer complaint allegations that state a cause of action."); *Ali v. Chelsea Catering*, 910 F. Supp. 338, 342 (N.D. Ohio 1995) (Nugent, J.) ("Summary judgment should be granted if a party who bears the burden of proof at trial does not establish an essential element of their case.") (citations omitted). Because Plaintiff lacks sufficient evidence of causation, no dispute remains for the jury to resolve. Accordingly, summary judgment is granted to Defendants on Count III (strict liability-failure to warn).

---

[7] As earlier stated, before the matter was transferred, discovery had concluded. *See* ECF No. 30 at PageID #: 586 (noting in the Transfer Order that the Court should "immediately set these cases for trial without reopening discovery.").

### C. Count IV (Strict Liability- Defective Products)

Defendants aver that there is no separate claim for defective products under Ohio law, and even if there were, it would be abrogated by the OPLA. A product liability claim under the OPLA is defined as claims regarding: "(a) The design, formulation, production, construction, creation, assembly, rebuilding, testing, or marketing of that product; (b) Any warning or instruction, or lack of warning or instruction, associated with that product; (c) Any failure of that product to conform to any relevant representation or warranty." Ohio Rev Code. § 2307.71(A)(13). The Master Complaint provides that the "Pelvic Mesh Products were defective and unreasonably dangerous to foreseeable consumers, patients, and users, including Plaintiffs, and the warnings labels, and instructions were deficient." ECF No. 31-1 at ¶ 110. In addition, Plaintiff claims Defendants' products are "inherently dangerous and defective, unfit and unsafe for their intended and reasonably foreseeable uses, and do not meet or perform to the expectations of patients and their health care providers." *Id.* at ¶ 111. Against this backdrop, the Court finds that Plaintiff's claim falls under the OPLA's purview and need not address whether such a "defective products" claim is a common law cause of action available under Ohio law. Moreover, Plaintiff does not dispute summary judgment on this claim. *See* ECF No. 23 at PageID #: 394. Accordingly, summary judgment is granted on Count IV (strict liability-defective product).

### IV. Conclusion

In sum, the Court grants summary judgment to Defendants regarding the following thirteen claims: Counts I (negligence), II (strict liability-manufacturing defect), III (strict liability-

(4:20CV160)

failure to warn), IV (strict liability-defective product), VII (fraudulent concealment), VIII (constructive fraud), IX (negligent misrepresentation), X (negligent infliction of emotional distress), XI (breach of express warranty), XII (breach of implied warranty), XIII (violation of consumer protection laws), XIV (gross negligence), and XV (unjust enrichment). Summary judgment is denied regarding Count VI (common law fraud).


      IT IS SO ORDERED.


   March 20, 2020                           */s/ Benita Y. Pearson*
Date                                      Benita Y. Pearson
                                             United States District Judge